FITAPELLI & SCHAFFER, LLP
Joseph A. Fitapelli (JF 9058)
Brian S. Schaffer (BS 7548)
Eric J. Gitig (EG 7399)
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| EVELYN RYAN, DANIEL CARR, and TUJUAN GARNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>LEGENDS HOSPITALITY, LLC, LEGENDS HOSPITALITY MANAGEMENT LLC, VOLUME SERVICES AMERICA, INC. d/b/a CENTERPLATE, and VOLUME SERVICES, INC.,<br><br>Defendant. | 11 CIV 3110 (RJS)<br><br>FIRST AMENDED CLASS ACTION COMPLAINT |
|---|---|

Plaintiffs Evelyn Ryan, David Carr, and Tujuan Garner (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Fitapelli & Schaffer, LLP, allege, upon personal knowledge as to themselves, and upon information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover misappropriated service charges for Plaintiffs and their similarly situated co-workers – In-Seat Servers who have been employed by Legends Hospitality, LLC and Legends Hospitality Management LLC and MVP Servers and Runners (collectively "In-Seat Food Service Workers") who have been employed by Volume Services America, Inc. d/b/a Centerplate, and Volume Services, Inc., at Yankee Stadium[1] in New York.

---

[1] For the purposes of this Complaint, the term Yankee Stadium will be used to refer to both the old Yankee Stadium and the new Yankee Stadium, which opened in 2009.

2. Yankee Stadium is one of the most iconic venues in sports history, playing host to the New York Yankees, who have captured 27 World Series titles, tops of any professional sports franchise. The New York Yankees were recently named the most valuable franchise in all of sports by Forbes Magazine, with a total enterprise value of $5.1 billion. In 2009, the Yankees opened the New Yankee Stadium.

3. To coincide with the opening of New Yankee Stadium, two of the most powerful brands in American sports – the New York Yankees and the Dallas Cowboys – came together alongside Goldman Sachs to form Legends Hospitality, LLC and Legends Hospitality Management LLC (collectively, the "Legends Hospitality Defendants"). Since that time, the stadium hospitality companies have grown to become the exclusive premium service provider of concessions, catering, and merchandising services at Yankee Stadium. In 2009, the Legends Hospitality Defendants helped the Yankees bring in record breaking revenue for the new stadium, and also received the Five Star Diamond Award from the American Academy of Hospitality Services. Currently, the Legends Hospitality Defendants generate approximately $25 million in annual operating income.

4. Volume Services America, Inc. d/b/a Centerplate and Volume Services, Inc. (collectively the "Volume Services Defendants") were the exclusive service providers of concessions and catering at Yankee stadium until 2008. The Volume Services Defendants form one of the largest hospitality companies in the world, providing services to more than 100 million guests and 250 North American sports, entertainment, and convention venues per year. Volume Services Defendants are the largest food service providers for the National Football League and a significant provider to Major League Baseball. In addition, the Volume Services Defendants have hosted countless landmark events, including 12 Super Bowls, 20 World Series and more than 100 major College Bowl Games.

5. Defendants have provided in-seat service at Yankee Stadium to patrons with field level seating between the right and left field foul lines, typically costing between $100.00 and $325.00 per ticket. The service has been offered from one hour prior to the start of the scheduled first pitch until the bottom of the seventh inning, and permits guests to order and receive food and beverages at their seats.

6. When field level patrons arrive at their seats, a menu is located in the cup-holder directly in front of their seat. The menu offers food and beverages, such as beer and hot dogs. The menu states that, "*A 20% service charge will be added to the listed prices. Additional gratuity is at your discretion.*" For example, a patron who orders a draft beer for $10.50, is in fact paying approximately $12.60, after a 20% service charge has been added. Plaintiffs and their similarly situated co-workers interact with patrons and take such food and beverage orders.

7. Defendants misappropriated gratuities from Plaintiffs and their similarly situated co-workers by retaining the 20% mandatory service charges paid by patrons, in addition to the cost of food and beverages, while simultaneously leading their customers to believe that these service charges were gratuities to be paid in their entirety to In-Seat Food Service Workers. In fact, the Food Service Workers did not receive **any** of the 20% service charges. This practice was held by the New York Court of Appeals in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), to be unlawful. The Court of Appeals in *Samiento v. World Yacht Inc.* stated: "We conclude that a charge that is not a voluntary payment may be a 'charge purported to be a gratuity' within the meaning of the statute. *Id* at 74.

8. The *Samiento v. World Yacht Inc.* case relied on New York Labor Law ("NYLL"), Article 6, § 196-d, which requires that:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. NYLL § 196-d.

9. New York's law further explains that "A charge purported to be a gratuity must be distributed in full as gratuities to the service employees or food service workers who provided the service." 12 N.Y.C.R.R. § 146-2.18(a). Moreover, "There shall be a rebuttable presumption that any charge in addition to charges for food, beverage…including but not limited to any charge for "service" or "food service" is a charge purported to be a gratuity." 12 N.Y.C.R.R. § 146-2.18(b). Here, since the 20% service charge is charged automatically and is not a voluntary payment, it is a purported gratuity that should have been distributed in full to Plaintiffs and their similarly situated co-workers.

10. Plaintiffs bring this action on behalf of themselves and all similarly situated current and former employees of Defendants who worked in New York pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor regulations.

## THE PARTIES

### Plaintiffs

#### Evelyn Ryan

11. Evelyn Ryan ("Ryan") is an adult individual who is a resident of New York, New York.

12. Ryan has been employed by the Legends Hospitality Defendants as an In-Seat Server at Yankee Stadium from in or around 2009 to the present.

13. Ryan was employed by the Volume Services Defendants as an MVP Server at Yankee Stadium from in or around 1999 to 2008.

14. Throughout the duration of her employment, Ryan has worked approximately 81 games (i.e. shifts) per year, plus any additional playoff and World Series games that were played at Yankee Stadium.

15. At all times relevant, Ryan has been a covered employee within the meaning of the NYLL.

**Daniel Carr**

16. Daniel Carr ("Carr") is an adult individual who is a resident of New York, New York.

17. Carr has been employed by the Legends Hospitality Defendants as an In-Seat Server at Yankee Stadium from in or around 2009 to the present.

18. Throughout the duration of his employment, Carr has worked approximately 81 games (i.e. shifts) per year, plus any additional playoff and World Series games that were played at Yankee Stadium.

19. At all times relevant, Carr has been a covered employee within the meaning of the NYLL.

**Tujuan Garner**

20. Tujuan Garner ("Garner") is an adult individual who is a resident of New York, New York.

21. Garner has been employed by the Legends Hospitality Defendants as an In-Seat Server at Yankee Stadium from in or around 2009 to the present.

22. Throughout the duration of his employment, Garner has worked approximately 81 games (i.e. shifts) per year, plus any additional playoff and World Series games that were played at Yankee Stadium.

23. At all times relevant, Garner has been a covered employee within the meaning of the NYLL.

**Defendants**

24. Upon information and belief, the Legends Hospitality Defendants are part of a single integrated enterprise that have jointly employed Plaintiffs and their similarly situated employees since in or around 2009. Each Legends Hospitality Defendant has had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

25. Upon information and belief, the Legends Hospitality Defendants' operations are interrelated and unified.

26. Upon information and belief, the Volume Services Defendants are part of a single integrated enterprise that jointly employed Plaintiff Ryan and similarly situated employees until in or around 2008. Each Volume Services Defendant has had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

27. Upon information and belief, the Volume Services Defendants' operations are interrelated and unified.

28. During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the NYLL.

29. Upon information and belief, during all relevant times, Defendants have had control over, and the power to change compensation practices at Yankee Stadium that affected Plaintiffs and similarly situated co-workers.

30. Upon information and belief, Defendants have had the power to determine employee policies at Yankee Stadium that affected Plaintiffs and similarly situated co-workers, including, but not limited to, the allocation of service charges.

**Legends Hospitality, LLC**

31. Legends Hospitality, LLC is a Delaware Limited Liability Company registered to do business in New York. Upon information and belief, Legends Hospitality, LLC's headquarters is located at 634 Frelinghuysen Avenue, Newark, New Jersey 07114.

32. From in or around 2009 to the present, Legends Hospitality, LLC has employed Plaintiffs and similarly situated employees within the meaning of the NYLL.

33. Legends Hospitality, LLC is a covered employer within the meaning of the NYLL, and has employed and/or jointly employed Plaintiffs and similarly situated employees from in or around 2009 to the present.

34. From in or around 2009 to the present, Legends Hospitality, LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including policies governing the allocation of service charges and other employment practices that applied to them.

35. From in or around 2009 to the present, Legends Hospitality, LLC has been the entity printed on Plaintiffs' paychecks and Form W-2's.

36. Upon information and belief, at all times relevant, Legends Hospitality, LLC's annual gross volume of sales made or business done was not less than $500,000.00.

**Legends Hospitality Management LLC**

37. Legends Hospitality Management, LLC is a Delaware Limited Liability Company registered to do business in New York. Upon information and belief, Legends Hospitality Management LLC's headquarters is located at 634 Frelinghuysen Avenue, Newark, New Jersey 07114.

38. From in or around 2009 to the present, Legends Hospitality Management, LLC has employed Plaintiffs and similarly situated employees within the meaning of the NYLL.

39. Legends Hospitality Management, LLC is a covered employer within the meaning of the NYLL, and has employed and/or jointly employed Plaintiffs and similarly situated employees from in or around 2009 to the present.

40. From in or around 2009 to the present, Legends Hospitality Management, LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including policies governing the allocation of service charges and other employment practices that applied to them.

41. From in or around 2009 to the present, Legends Hospitality Management, LLC has been the entity who appeared on materials received by Plaintiffs regarding their employment, including, but not limited to, correspondences and training manuals.

42. Upon information and belief, at all times relevant, Legends Hospitality Management, LLC's annual gross volume of sales made or business done was not less than $500,000.00.

**Volume Services America, Inc. d/b/a Centerplate**

43. Volume Services America, Inc. d/b/a Centerplate ("Centerplate") is a Delaware corporation. Upon information and belief, Centerplate's headquarters is located at 201 East Broad Street, Spartanburg, South Carolina 29306.

44. Until in or around 2008, Centerplate employed Plaintiff Ryan and similarly situated employees within the meaning of the NYLL.

45. Centerplate is a covered employer within the meaning of the NYLL, and employed and/or jointly employed Plaintiff Ryan and similarly situated employees from in or around 1999 to 2008.

46. From in or around 1999 to 2008, Centerplate maintained control, oversight, and direction over Plaintiff Ryan and similarly situated employees, including policies governing the allocation of service charges and other employment practices that applied to them.

47. From in or around 1999 to 2008, Centerplate was the entity printed on Plaintiff Ryan's paychecks.

48. Upon information and belief, at all times relevant, Centerplate's annual gross volume of sales made or business done was not less than $500,000.00.

**Volume Services, Inc.**

49. Volume Services, Inc. is a Delaware corporation registered to do business in New York. Upon information and belief, Volume Services, Inc.'s headquarters is located at 201 East Broad Street, Spartanburg, South Carolina 29306.

50. From in or around 1999 to 2008, Volume Services, Inc. employed Plaintiff Ryan and similarly situated employees within the meaning of the NYLL.

51. Volume Services, Inc. is a covered employer within the meaning of the NYLL, and employed and/or jointly employed Plaintiff Ryan and similarly situated employees from in or around 1999 to 2008.

52. From in or around 1999 to 2008, Volume Services, Inc. maintained control, oversight, and direction over Plaintiff Ryan and similarly situated employees, including policies governing the allocation of service charges and other employment practices that applied to them.

53. From in or around 1999 to 2008, Volume Services, Inc. was the entity printed on Plaintiff Ryan's Form W-2's.

54. Upon information and belief, at all times relevant, Volume Services, Inc.'s annual gross volume of sales made or business done was not less than $500,000.00.

## JURISDICTION AND VENUE

55. This Court has complete diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and diversity jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d).

56. The amount in controversy in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

57. The members of the proposed class are citizens of states different from that of Defendants.

58. Plaintiff's claims involve matters of national or interstate interest.

59. Citizenship of the members of the proposed class is dispersed among a substantial number of states.

60. Upon information and belief, Defendants reside in Delaware.

61. Upon information and belief, Defendants are subject to personal jurisdiction in New York.

62. Upon information and belief, the proposed class contains at least 100 members.

63. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

64. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## CLASS ACTION ALLEGATIONS

65. Plaintiffs bring the First Cause of Action, an NYLL claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked for Defendants as In-Seat Servers and MVP Servers/Runners ("In-Seat Food Service Workers") at Yankee Stadium in New York between May 9, 2005 and the date of final judgment in this matter (the "Rule 23 Class").

66. Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

67. The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

68. Upon information and belief, the size of the Rule 23 Class is at least 100 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

69. Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

70.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

- (a) whether Defendant violated NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 137 and 146, as alleged herein;

- (b) whether Defendants demanded, handled, pooled, counted, distributed, accepted and/or retained service charges and/or gratuities paid by customers that were intended for Plaintiffs and the Rule 23 Class and which customers reasonably believed to be gratuities for Plaintiffs and the Rule 23 Class;

- (c) whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

- (d) the nature and extent of class-wide injury and the measure of damages for those injuries.

71.     The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and all the Rule 23 Class members work, or have worked, for Defendants as In-Seat Food Service Workers in New York. Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL to be paid for all gratuities earned. Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

72.     Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class members. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between the Plaintiffs and the Rule 23 members.

73. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violation of the NYLL as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

74. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## CLASS-WIDE FACTUAL ALLEGATIONS

75. Plaintiffs and the members of the Rule 23 Class have been victims of Defendants' common policy and pattern or practice that violated their rights under the NYLL by denying them gratuities and/or service charges. At all times relevant, Defendants' unlawful policy and pattern or practice was willful.

76. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the members of the Rule 23 Class by engaging in a pattern, practice, and/or policy of violating the NYLL, as described in this Class Action Complaint. This policy and pattern or practice includes, but is not limited to, retaining portions of the service charges earned by Plaintiffs and the members of the Rule 23 Class, and which Defendants'

customers reasonably believed would be gratuities paid to In-Seat Food Service Workers, including Plaintiffs and the members of the Rule 23 Class.

77. Defendants' unlawful conduct, as described in this Class Action Complaint, has been pursuant to a corporate policy or practice of minimizing labor costs and denying employees compensation by knowingly violating the NYLL.

78. Defendants' unlawful conduct has been widespread, repeated, and consistent. Defendants' policies and practices, as described in this Class Action Complaint, were centrally promulgated and uniform.

79. Defendants' unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the members of the Rule 23 Class.

### FIRST CAUSE OF ACTION
### New York Labor Law Article 6 – Unlawful Retention of Service Charges
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

80. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

81. At all times relevant, Plaintiffs and the members of the Rule 23 Class have been employees within the meaning of NYLL §§ 190, *et seq.*, and any supporting New York State Department of Labor regulations.

82. At all times relevant, Defendants have been employers within the meaning of NYLL §§ 190, *et seq.*, and any supporting New York State Department of Labor regulations.

83. At all times relevant, Defendants have been employers, agents, and/or officers within the meaning of NYLL § 196-d and any supporting New York State Department of Labor regulations.

84. The wage payment provisions of Article 6 of the NYLL and any supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

85. Defendants unlawfully retained service charges earned by Plaintiffs and the members of the Rule 23 Class in violation of the NYLL and supporting New York State Department of Labor Regulations.

86. By Defendants' knowing or intentional demand for, acceptance of, and/or retention of the service charges paid by customers when ordering food and beverages from Defendants, when such customers had a reasonable expectation that such service charges would be paid to Plaintiffs and the members of the Rule 23 Class, Defendants have willfully violated NYLL Article 6, § 196-d and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §§ 137 and 146.

87. Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid wages, liquidated damages, as provided for by NYLL Article 6 § 198, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, seek for the following relief:

A. Defendants be held jointly and severally liable for unpaid portions of service charges, liquidated damages of 25% (prior to April 8, 2011) or 100% (after April 9, 2011), interest, and other unpaid wages pursuant to NYLL Article 6, §§ 190, *et seq.* and Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor regulations;

B. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C. Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

D. Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under NYLL Article 6, §§ 190, *et seq.* and NYLL Article 19, §§ *650, et seq.*, and the supporting New York State Department of Labor regulations;

E. Pre-judgment interest;

F. An injunction requiring Defendants to pay all statutorily required wages pursuant to the NYLL;

G. Reasonable attorneys' fees and costs of the action;

H. Such other relief as this Court shall deem just and proper.

Dated: New York, New York
May 12, 2011

Respectfully submitted,

_____
Brian S. Schaffer (BS 7548)

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli (JF 9058)
Brian S. Schaffer (BS 7548)
Eric J. Gitig (EG 7399)
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and
the Putative Class*