UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVELYN RYAN, *et al.*,

              Plaintiffs,

    -v-                             No. 11 Civ. 3110 (RJS)

LEGENDS HOSPITALITY, LLC., *et al.*,

              Defendants.

**DEFENDANTS LEGENDS HOSPITALITY, LLC'S AND
LEGENDS HOSPITALITY MANAGEMENT LLC'S
MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO SEVER CLAIMS AND
<u>DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

## TABLE OF CONTENTS

**Page**

Table of Authorities ii

I.   Introduction and Summary of Argument 1

II.  Factual Background 2

    A.  Defendants 2

    B.  Plaintiff's Employment 3

    C.  Customer Service Charges 4

    D.  Collective Bargaining Agreements Governing Plaintiffs' Terms

        And Conditions of Employment 5

    E.  Service Charges Made To Plaintiffs 5

    F.  Service Charge Payments Made To Putative Class Members 6

    G.  Plaintiffs' Retainer Agreements 7

III. Argument:  The Court Should Sever the Legends Claims from the

    Centerplate Claims 7

    A.  The Legends and Centerplate Defendants Were Improperly Joined 7

    B.  Additional Factors Support Severance 12

IV.  Argument:  The Complaint Should Be Dismissed for Lack of

    Subject Matter Jurisdiction 14

    A.  Plaintiffs Are Not Entitled To Liquidated Damages Or

        Attorney Fees for Unpaid Gratuities 14

    B.  Plaintiffs Should Not Be Permitted To Establish Federal Jurisdiction

        By Bootstrapping Damages Which Are Not Available Until After

        Federal Jurisdiction Is Established 17

C.  Even If Liquidated Damages Are Available, Plaintiffs

May Only Seek A 25% Penalty For Claims Arising

Before April 9, 2011                                          18

D.  Plaintiffs Have Already Been Paid Part Of The Service Charge    21

E.  The Court Lacks Subject Matter Jurisdiction Over the Legends

Claim                                                        21

CONCLUSION                                                      28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009)..................................................................8

*Casseus v. R & J of S. Fla., Inc.*,
   No. 07-21954-CIV, 2007 WL 2376242 (S.D. Fla. Aug. 16, 2007) ........................12

*CFCU Community Credit Union v. Hayward*,
   552 F.3d 253 (2d Cir. 2009)................................................................................20

*Charvat v. GVN Mich., Inc.*,
   561 F.3d 623 (6th Cir. 2009) ..........................................................................23, 24

*Chase Manhattan Bank, N.A. v. Aldridge*,
   906 F. Supp. 870 (S.D.N.Y. 1995) ......................................................................22

*Childs v. Bane*,
   605 N.Y.S.2d 488 (N.Y. App. Div. 1993) ............................................................16

*Conyers v. Rossides*,
   558 F.3d 137 (2d Cir. 2009)................................................................................21

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   No. 09 Civ. 1608 (RJH), 2011 WL 2127808, 788 F. Supp. 2d 253 (S.D.N.Y. May 27,
   2011) .................................................................................................................19

*Deajess Med. Imaging, P.C. v. Allstate Ins. Co.*,
   344 F. Supp. 2d 907 (S.D.N.Y. 2004)..................................................................12

*Deskovic v. City of Peekskill*,
   673 F. Supp. 2d 154 (S.D.N.Y. 2009)............................................................8, 9, 12

*Deutsch v. Catherwood*,
   294 N.E.2d 193 (N.Y. 1973)................................................................................20

*DirecTV, Inc. v. Lewis*,
   No. 03-CV-6241CJS(F), 2004 WL 941805 (S.D.N.Y. Jan. 6, 2004)......................10

*DiTolla v. Doral Dental IPA of N.Y., LLC*,
   469 F.3d 271 (2d Cir. 2006)................................................................................26

*Dukes v. Twin City Fire Ins. Co.*,
   No. CV-09-2197-PHX-NVW, 2010 WL 94109 (D. Ariz. Jan. 6, 2010)................25

*Exime v. E.W. Ventures*,
    250 F.R.D. 700................................................................................................11

*Faulkner v. Astro-Med, Inc.*,
    No. C 99-2562 SI, 1999 WL 820198 (N.D. Cal. Oct. 4, 1999) ................................25

*Great Am. Leasing Corp. v. Rohr-Tippe Motors, Inc.*,
    387 F. Supp. 2d 992 (N.D. Iowa 2005)................................................................25

*Gustafson v. Bell Atlantic Corp.*,
    171 F. Supp. 2d 311 (S.D.N.Y. 2001)..................................................................15

*Hart v. Schering-Plough Corp.*,
    253 F.3d 272 (7th Cir. 2001) ..................................................................25, 26, 28

*Horton Co. v. Int'l Tel. & Tel. Corp.*,
    85 F.R.D. 369 (W.D. Pa. 1980) ...........................................................................8

*Houston v. Scheno*,
    No. 06-CV 2901(SJF), 2007 WL 2230093 (E.D.N.Y. July 31, 2007) ....................25

*In re Kaufman's Estate*,
    285 N.Y.S. 347 (N.Y. Sur. Ct. 1936)...................................................................20

*Kenvin v. Newburger, Loeb & Co.*,
    37 F.R.D. 473 (S.D.N.Y. 1965) ......................................................................9, 11

*Kuebel v. Black & Decker, Inc.*,
    643 F.3d 352 (2d Cir. 2011)...............................................................................19

*Lanzetta v. Florio's Enters., Inc.*,
    No. 08 Civ. 6181(DC), 2011 WL 3209521 (S.D.N.Y. July 27, 2011) ....................20

*LaSala v. E*Trade Secs. LLC*,
    No. 05 Civ. 5869(SAS), 2005 WL 2848853 (S.D.N.Y. Oct. 31, 2005) ............23, 27

*Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*,
    702 F. Supp. 2d 104 (E.D.N.Y. 2010) ..............................................................8, 10

*Mak Automation, Inc. v. G.C. Evans Sales & Mfg. Co.*,
    No. 4:06CV1579MLM, 2008 WL 821711 (E.D. Mo. Mar. 25, 2008)......................25

*Matter of Ayman v. Teachers' Retirement Bd. of City of N.Y.*,
    9 N.Y.2d 119 (1961).........................................................................................20

*Matter of Matthew L.*,
    882 N.Y.S.2d 291 (N.Y. App. Div. 2009) ............................................................16

*McNaughton v. Merck & Co.*,
  No. 04-CV-8297(LAP), 2004 WL 5180726 (S.D.N.Y. Dec. 17, 2004) ...................................9

*Mehlenbacher v. Akzo Nobel Salt, Inc.*,
  216 F.2d 291 (2d Cir. 2000) ...........................................................................................................22

*Morrison v. Nat'l Australia Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) ...........................................................................................................21

*Pajak v. Pajak*,
  452 N.Y.2d 381, 437 N.E.2d 1138 (1982) ...................................................................................16

*Panam Mgmt. Grp., Inc., v. Pena*,
  No. 08-cv-2258(JFB)(ARL), 2010 WL 3708656 (E.D.N.Y. Sept. 14, 2010) .......................22

*People v. Vetri*,
  309 N.Y. 401, 131 N.E.2d 568 (1955) ..........................................................................................15

*Raskin v. Corsi*,
  60 N.Y.S.2d 400 (N.Y. App. Div. 1946) .......................................................................................16

*Reilly v. NatWest Mkts. Grp. Inc.*,
  181 F.3d 253 (2d Cir. 1999)............................................................................................................20

*Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*,
  130 S. Ct. 1431 (2010)...............................................................................................................1, 17

*Sunshine v. Reassure Am. Life Ins. Co.*,
  No. 10-01030, 2011 WL 666054 (E.D. Pa. Feb. 22, 2011) .............................................26, 27

*Tongkook Am., Inc. v. Shipton Sportswear Co.*,
  14 F.3d 781 (2d Cir. 1994)....................................................................................................passim

*Truelove v. Northeast Capital & Advisory, Inc.*,
  95 N.Y.2d 220, 738 N.E.2d 770 (2000).......................................................................................15

*United States ex rel. Perler v. Papandon*,
  331 F.3d 52 (2d Cir. 2003)................................................................................................................9

*Wicaksono v. XYZ 48 Corp.*,
  No. 10 Civ. 3635 (LAK) (JCF), 2011 WL 2022644 (S.D.N.Y. May 2, 2011) (Francis,
  Mag.) ..........................................................................................................................................18, 19

*Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*,
  166 F.3d 59 (2d Cir. 1999)........................................................................................................22, 23

*Wood v. Maguire Auto. LLC*,
  No. 5:09-CV-0640(GTS/GHL), 2011 WL 4478485 (N.D.N.Y. Sept. 26, 2011) ..................23

**STATUTES**

28 U.S.C.
    § 1332(a) ...................................................................................1, 2, 22, 23
    § 1332(d) ............................................................................................ passim
    § 1332(d)(2) ...................................................................................................26

C.P.L.R.
    § 901(b) ..................................................................................................1, 18

N.Y. Lab. Law
    § 190(1) ............................................................................................15, 16, 17
    § 193 .................................................................................................16, 17
    § 198(1-a) ..........................................................................................14, 19
    § 198 ....................................................................................1, 14, 17, 24
    § 198-d ............................................................................................... passim
    § 517(1) ...........................................................................................16
    § 518(1)(a) .......................................................................................16
    § 663(1) ...........................................................................................18

N.Y. Sess. Laws Chapter 564 ............................................................18, 20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1)....................................................................1, 2, 21

Fed. R. Civ. P. 20 ...............................................................................8, 12

Fed. R. Civ. P. 20(a)(2)................................................................... passim

Fed. R. Civ. P. 21 ............................................................................1, 8, 12

Fed. R. Civ. P. 23 ...............................................................................17

## TABLE OF EXHIBITS

*Declaration of Anastasia M. Kerdock*

**Exhibit 1** ........................................................................ Second Amended Class Action Complaint

**Exhibit 2** ........................Excerpts From Pages 1 to 125 of the 9/15/11 Deposition of Evelyn Ryan

**Exhibit 3** ................... Excerpts from Pages 126 to 157 of the 9/15/11 Deposition of Evelyn Ryan, and Excerpts From the 9/16/11 Deposition of Evelyn Ryan

**Exhibit 4** ................ Selected Exhibits From the 9/15/11 and 9/16/11 Depositions of Evelyn Ryan

**Exhibit 5** .................................................. Excerpts From the 10/6/11 Deposition of Daniel Smith

**Exhibit 6** .................................................... Excerpts From the 9/15/11 Deposition of Daniel Carr

**Exhibits 7** .............................................. Excerpts From the 9/28/11 Deposition of Tujuan Garner

**Exhibit 8** ........................................................................... Redacted Retainer Agreement

**Exhibit 9** ................................................. Centerplate-Local 153 Collective Bargaining Agreement

**Exhibit 10** ....................................June 29, 2010 New York State Senate Sponsor's Memorandum

*Declaration of Daniel Smith*

**Attachment A** ............................................................ Legends In-Seat Service Menu (pre 6/7/11)

**Attachment B** .......................................................... Legends In-Seat Service Menu (post 6/7/11)

**Attachment C** ............................. Original Legends-Local 153 Collective Bargaining Agreement

**Attachment D** ............................ Amended Legends-Local 153 Collective Bargaining Agreement

**Attachment E** ................................................................. In-Seat Sales Figures (filed under seal)

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to Fed. R. Civ. P. 12(b)(1) and 21, defendants Legends Hospitality, LLC and Legends Hospitality Management LLC (collectively "Legends") respectfully request that plaintiffs' claims against Legends be severed from the claims against Volume Services America, Inc., d/b/a Centerplate, and Volume Services, Inc. (collectively "Centerplate") due to improper joinder under Fed. R. Civ. P. 20(a)(2), and then dismissed for lack of subject matter jurisdiction.

On behalf of a class of "servers" and, in the case of Centerplate, "runners," working for stadium hospitality contractors at the old Yankee Stadium from 2005 to 2008 and at the new Yankee Stadium from 2009 to the present, named plaintiffs Evelyn Ryan, Daniel Carr, and Tujuan Garner allege that a 15% "service charge" collected by Centerplate and a 20% "service charge" collected by Legends from in-seat customers was a gratuity that was unlawfully misappropriated by the contractors in violation of N.Y. Labor Law § 196-d.  Plaintiffs also seek attorney fees and liquidated damages under N.Y. Labor Law § 198.  Plaintiffs allege that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) (*i.e.*, "complete diversity") and under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  *See* Second Am. Compl. ¶¶ 55-62 (attached hereto as Ex. 1).

In a blatant forum shopping attempt to avoid a New York state law that bars obtaining penalties (*i.e.*, liquidated damages) in class actions filed in state court,[1] plaintiffs intentionally misjoined Legends and Centerplate in order to satisfy the amount in controversy for federal diversity jurisdiction.  However, the Legends and Centerplate claims should be severed from each other because they do not arise from the "same transaction, occurrence, or series of

---

[1]  *See* N.Y. C.P.L.R. 901(b); *Shady  Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010).

transactions or occurrences," but rather involve different employers, time periods, work locations, collective bargaining agreements, compensation structures, and communications to customers regarding the nature of the service charges.  *See* Fed. R. Civ. P. 20(a)(2).

In addition, none of the named plaintiffs can meet the $75,000 amount in controversy requirement for complete diversity jurisdiction under 28 U.S.C. § 1332(a) without (1) including liquidated damages and attorney fees that are not available for violations of N.Y. Labor Law § 196-d; (2) bootstrapping liquidated damages only available once in federal court to establish federal jurisdiction in the first instance; (3) applying retroactively a 2011 amendment to the statute increasing allegedly available liquidated damages; (4) ignoring the 4-6% portion of the service charge already paid to them; and (5) speculating regarding the future amount of attorney fees they might collect if successful.  Plaintiffs also cannot meet the $5,000,000 threshold for establishing CAFA subject matter jurisdiction on their claims against Legends without making these same miscalculations or aggregating misjoined claims.  Accordingly, plaintiffs' claims should be dismissed for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).

II.    FACTUAL BACKGROUND[2]

    A.    Defendants

Until the end of 2008, Centerplate was the exclusive provider of concessions at the old Yankee Stadium.  *See* Second Am. Compl. ¶ 3.  Legends was formed "[t]o coincide with the opening of the new Yankee Stadium" in 2009.  *Id.* at ¶ 4.  The Legends and Centerplate defendants are competitors in the stadium hospitality industry.  *See* Decl. of Dan Smith, ¶¶ 11-13.

_____

[2]  For purposes of this motion only, the Legends defendants assume that facts cited from the complaint are true and expressly reserve the right to contest these factual allegations following full investigation and discovery.

B.      Plaintiffs' Employment

Plaintiff Ryan was employed by Centerplate as an "MVP Server" and "MVP Runner" at the old Yankee Stadium from in or around 1999 to on or about December 31, 2008. Second Am. Compl., ¶ 16. Ryan was not employed by Centerplate after 2008. *See* Sept. 15, 2011 Dep. of Evelyn Ryan at 166:13-23 (relevant excerpts attached as Exs. 2-3)[3]. Ryan was then employed by Legends from on or about January 1, 2009 to the present as an "In-Seat Server" at the new Yankee Stadium. Second Am. Compl., ¶ 15.

When Legends started providing services at the new Yankee Stadium, it had to hire new employees, including In-Seat Servers. *See* Oct. 6, 2011 Dep. of Dan Smith at 37:21 – 38:4 (relevant excerpts attached hereto as Ex. 5). To become a Legends employee, Ryan filled out an application, completed drug testing, went through orientation, and received a Legends employee handbook that was different from the handbook she received from Centerplate. *See* Ryan dep. at 27:5-9, 27:22 – 28:11, 61:5-9. The Legends drug testing was necessary "because it was starting a new company." *Id.* at 170:5-10, 174:22 – 175:13. Ryan had a different supervisor when she started working at Legends, and she did not recall that supervisor working at Centerplate. *Id.* at 31:4 -7, 177:4 -14. When Legends began providing hospitality services at the new Yankee Stadium, it hired some In-Seat Servers who had not previously worked for Centerplate. *Id.* at 60:24 – 61:4.

Plaintiff Carr has been employed by Legends from on or about January 1, 2009 to the present as an "In-Seat Server." Second Am. Compl., ¶ 15. Carr was never employed by Centerplate. *See* Sept. 15, 2011 Dep. of Daniel Carr at 19:24 – 20:5 (relevant excerpts attached as Ex. 6).

---

[3]  Selected Ryan deposition exhibits are attached hereto as Exhibit 4.

Plaintiff Garner has been employed by Legends from on or about January 1, 2009 to the present as an "In-Seat Server." Second Am. Compl., ¶ 22. Garner, who applied to work for Legends after being contacted by an employment agency, went through a series of four interviews before being offered a food server job by Legends. *See* Sept. 28, 2011 Dep. of Tujuan Garner dep. at 13:14 – 14:14, 14:20-21, 15:4 – 16:5 (relevant excerpts attached as Ex. 7). Garner was never employed by Centerplate. *See id.* at 14:22-24.

C.     Customer Service Charges

At the new Yankee Stadium, In-Seat Servers place menus in the seat cupholders, take orders, and accept cash and charge payments. Carr dep. at 20:8-19, 24:10-14, 39:11 – 42:3; Ryan dep. at 44:4 -21.   Until June 7, 2011, the Legends menu at the new Yankee Stadium informed customers that "[a] 20 percent service charge will be added to the listed prices. Additional gratuity is at your own discretion." *See* Carr dep. at 64:10 – 66:1 & ex. 3 [P000116]; Second Am. Compl., ¶ 7; Smith decl. at ¶ 15 & att. A. Thereafter, the Legends menu was revised to explain that "[t]he 20% supplemental charge . . . represents both an Administrative Fee and a Gratuity," and that "4 to 6% of [the] total bill before tax will be added as a Gratuity, depending on your server's seniority," and "will be distributed directly to your server." *See* Smith decl. at ¶ 16 & att. B; *see also* Ryan dep. at 251:9 – 254:20 & ex. 30 [P000118] (post-June 7, 2011 menu); Second Am. Compl., ¶ 7.

When Centerplate provided stadium hospitality services at the old Yankee Stadium, a different service charge was collected and different menus were in use. *See* Ryan dep. at 53:16 – 54:21 & ex. 16 [P000111 – 000112]. For example, the 2008 Centerplate menu explained:

> Your check will contain a 15 % Service Charge. Half of this Service Charge is used to defray operating costs, etc. and is retained by the Company. The other half is distributed among the servers and runners included in providing the service. You are free to add a gratuity.

4

*See* Ryan dep., at 248:25 – 250:15 & ex. 29 [C001022B].

    D.    Collective Bargaining Agreements Governing Plaintiffs' Terms and Conditions of Employment

Since 2009, the terms and conditions of employment of all Legends In-Seat Servers have been governed by a collective bargaining agreement between Legends and Local 153 of the Office and Professional Employees International Union.  *See* Smith decl., ¶¶ 19-22 & atts. C ("Legends CBA") & D ("Legends Amended CBA"); Ryan dep. at 145:3-6.  The Legends CBA provides that In-Seat Servers are hourly employees who will receive shift pay of $33.86, plus either 4% or 6% of their net sales, depending on seniority.  *See id.* at art. 7, part A, § 1 [A-11]; *see also* Garner dep. at 40:20 – 41:9; Carr dep. at 26:18 – 27:22, 120:20 – 122:14.  This payment constituted a share of the service charge collected from customers.  *See* Smith dep. at 61:24 – 63:6, 111:21-24.  Ryan concedes that if she already received a 6% portion of the service charge, then she is allegedly only owed the remaining 14% portion.  *See* Ryan dep. at 153:11 – 154:22.

    E.    Service Charge Payments Made To Plaintiffs

    1.    Evelyn Ryan

From the start of her employment with Legends through May 10, 2011,[4] Ryan's sales included service charges totaling $ 52,260.09, which represented 20% of her net sales (*i.e.*, sales before tax and service charge), and $ 1,817.73 of such charges was collected on or after April 9, 2011 (the effective date of the Wage Theft Prevention Act).  *See* Smith decl. at ¶ 24 and att. E.  It

---

[4]  The operative date for determining the amount in controversy is May 9, 2011, the date plaintiffs filed their initial complaint.  *See Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).  Defendant's records include amounts through May 10, but the inclusion of an extra game is immaterial to this motion.

is undisputed that, as required by the Legends CBA, Legends paid Ryan 6% of her net sales during this time period, or $ 15,678.03, including $ 545.32 on or after April 9, 2011.  *See id.*; Ryan dep. at 124:2 – 127:12, 129:15-25.  Thus, at most $ 36,582.06 has not been paid to Ryan.

2.    Daniel Carr

From the start of his employment with Legends through May 10, 2011, Carr's sales included service charges totaling $ 25,608.43, which represented 20% of his net sales, and $ 1,286.00 of such service charges was collected on or after April 9, 2011.  *See* Smith decl. at ¶ 25 and att. E.  It is undisputed that, as required by the Legends CBA, Legends paid Carr 4% of his net sales in 2009 and 2010, and 6% of his net sales in 2011, or $ 5,330.37 through May 10, 2011, including $ 385.80 on or after April 9, 2011.  *See id.*; Carr dep. at 77:5 – 78:10, 121:24 - 123:12. Thus, at most $ 20,278.06 of the service charges has not been paid to Carr.

3.    Tujuan Garner

From the start of his employment with Legends through May 10, 2011, Garner's sales included service charges totaling $ 45,938.03, which represented 20% of his net sales, and $ 2,107.40 of such service charges was collected on or after April 9, 2011.  *See* Smith decl. at ¶ 26 and att. E.  It is undisputed that, as required by the Legends CBA, Legends paid Garner 4% of his net sales in 2009 and 2010, and 6% of his net sales in 2011, or $ 9,506.92 through May 10, 2011, including $ 632.22 on or after April 9, 2011.  *See id.*; Garner dep. at 48:9-12.  Thus, at most $ 36,431.10 of the service charges has not been paid to Garner.

F.    Service Charge Payments Made to Putative Class Members

From the start of the 2009 season through May 10, 2011, Legends recorded $ ███████ in service charges, and $ ███████ of such service charges were collected on or after April 9, 2011.  *See* Smith decl. at ¶ 27 and att. E.  Legends paid In-Seat Servers $

███████ of the service charges in accordance with the Legends CBA, including $ ███████

on or after April 9, 2011.  *See* Smith decl. at ¶ 27 and att. E.  Thus, at most $ ████████ of the

service charges has not been paid to putative class members.

   G.  Plaintiffs' Retainer Agreements

   Each plaintiff entered into a retainer agreement with their counsel regarding, *inter alia*,

how their counsel would be paid.  *See, e.g.*, Carr dep. at. 103:2 – 105:12; Retainer Agreement at

¶¶ 5, 8 (attached hereto as Ex. 8).  The retainer agreement provides that if this action is not

certified as a class action, plaintiffs' counsel will receive the greater of (a) 33% of the "net

proceeds" (the pre-tax recovery, which *includes* any attorney fees award, less unrecovered

disbursements), or (b) the full amount of any attorney fees award.  *See* Retainer Agreement, ¶ 8.

If a class action is certified, plaintiffs' counsel will receive the amount awarded for attorney fees

if plaintiffs recover monetary or other relief.  *See id.* at ¶ 5.  Carr admitted that the amount of

legal fees that his lawyers are going to receive in this case cannot be calculated now because the

amount he may recover in this action is unknown.  *See* Carr dep. at 105:6-12.  To date, plaintiffs

have not been invoiced for any legal fees and have <u>not paid</u> their counsel <u>any</u> attorneys' fees.  *See*

Carr dep. at 102:9-25; Ryan dep. at 67:18-25.

III.  ARGUMENT:  THE COURT SHOULD SEVER THE LEGENDS CLAIMS FROM THE
   CENTERPLATE CLAIMS

   A.  The Legends and Centerplate Defendants were Improperly Joined

   Plaintiffs have misjoined the Legends and the Centerplate defendants in order to satisfy

the amount in controversy requirement.  Here, the appropriate remedy is to sever the claims into

two separate actions.  *See* Fed. R. Civ. P. 21.

   Rule 20(a)(2) permits the joinder of multiple defendants in one action if:

(A)  any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions and occurrences; and

(B)  any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20 (emphasis added)

"The plaintiff bears the burden of demonstrating that joinder is warranted under Rule 20." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) (citing *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 827 (S.D.N.Y. 2008)). "In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Deskovic*, 673 F. Supp. 2d at 159(citations omitted).  However, "the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *see, e.g., Deskovic*, 673 F. Supp. 2d at 160 (joint and several liability allegation was a legal conclusion).

The Court's discretion in permitting permissive joinder of defendants "is limited by the two prerequisites of the rule: first, a right to relief must be asserted which arose from the same transaction or occurrence *and*, second, a question of law or fact common to all the parties must arise in the action." *Horton Co. v. Int'l Tel. & Tel. Corp.*, 85 F.R.D. 369, 371 (W.D. Pa. 1980) (emphasis added).  "As is clear from the plain language of Rule 20(a)(2), both criteria must be met for joinder to be proper." *Deskovic*, 673 F. Supp. 2d at 159  (citations omitted); *see also Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010) ("This test is in the conjunctive; both prongs of Rule 20 must be satisfied for joinder to be proper.  In all other circumstances, joinder of parties in one action is improper.") (citing *Nassau County Ass'n of Ins. Agents*, 497 F.2d at 1154); *McNaughton v. Merck & Co.*, No. 04-CV-8297(LAP), 2004 WL 5180726, at *2 (S.D.N.Y. Dec. 17, 2004) (holding that joinder of

defendants was improper where only one of the two preconditions of Rule 20(a)(2) was met);*Kenvin v. Newburger, Loeb & Co.*, 37 F.R.D. 473, 475 (S.D.N.Y. 1965) ("not only must there be a common question, but also the 'right to relief' must arise from the 'same transaction' or 'series of transactions'"); Moore's Fed. Prac. § 21.02[1] (4th ed. 2009) ("Failure to satisfy either prerequisite for permissive joinder constitutes misjoinder of parties."). As demonstrated below, plaintiffs cannot satisfy the first criterion for proper joinder.

        1.      The Legends defendants are not jointly and severally liable for the alleged violations committed at the old Yankee Stadium

In their First Amended Complaint, plaintiffs requested that all defendants "be held jointly and severally liable" for the alleged unpaid service charges and liquidated damages. *See* First Am. Compl. at 15, ¶ A, filed May 12, 2011, dkt. no. 3. But in their Second Amended Complaint, plaintiffs no longer request that defendants be held jointly and severally liable. *See* Second Am. Compl. at 15-16, ¶¶ A-I. In any event, "whether all Defendants 'are jointly and severally liable' for [the] alleged conduct is a legal conclusion that, unlike [Plaintiffs'] factual allegations, need not be accepted as true." *Deskovic*, 673 F. Supp. 2d at 160 (citing *Iqbal*, 129 S. Ct. at 1949); *see generally United States ex rel. Perler v. Papandon*, 331 F.3d 52, 55 (2d Cir. 2003) (considering joint and several liability as a matter of law). Plaintiffs' factual allegations confirm that there is no legal basis for imposing liability on all four defendants for the entire period covered by this action.

Ryan alleges she was employed by Centerplate "from in or around 1999 to 2008" (*i.e.*, at the old Yankee Stadium), and by Legends "from in or around 2009 to the present" (*i.e.*, at the new Yankee Stadium), while Carr and Garner only allege that they were employed by the Legends defendants. *See* Second Am. Compl. at ¶¶ 3, 4, 15-16, 19, 22. Plaintiffs do not allege that Legends and Centerplate were joint employers of all putative class members at both the new

and old Yankee Stadiums and, in fact, specifically plead that Legends only employed In-Seat Servers "from in and around 2009 to the present."  *Id.* at ¶¶ 25-28.  Further, plaintiffs allege that Legends was formed "[t]o coincide with the opening of [the new] Yankee Stadium," and thus did not exist during the time period covering the Centerplate allegations.  *Id.* at ¶ 4.  Accordingly, there is no legal basis for holding Legends jointly and severally liable for the alleged Centerplate violations.

> 2.    Plaintiffs' claims against Legends and Centerplate did not arise out of the same transaction, occurrence, or series of transactions or occurrences

Plaintiffs do not allege that their right to relief "is asserted against [Legends and Centerplate] . . . with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences."  *See Lyons P'ship*, 702 F. Supp. 2d at 111 (no allegation that claims arose from same transaction or that defendants acted jointly or conspired with each other).  "[C]ourts properly refuse joinder when claims, while legally similar, are factually distinct."  *DirecTV, Inc. v. Lewis*, No. 03-CV-6241CJS(F), 2004 WL 941805, at *3 (S.D.N.Y. Jan. 6, 2004) (quoting 4 Moore's Fed. Prac., § 20.05[3]).

Legends and Centerplate are two separate, competitive business entities who provided services at different stadiums during different time periods.  When Legends won a competitive bid for the new Yankee Stadium work, Centerplate employees from the old Yankee Stadium were required to complete a Legends employment application, interview, and pass a drug screening test before being hired.  *See* Ryan dep. at 27:5-9, 27:22 – 28:11, 61:5-9, 170:5-10, 174:22 175:13; Garner dep. at 15:4 – 16:5.  While the putative class members employed by Legends and Centerplate were represented by the same local union, they were covered by different collective bargaining agreements negotiated independently by Legends and Centerplate.  *See* Smith decl., ¶ 19 & atts. C-D; Centerplate CBA (attached hereto as Ex. 9).  These agreements addressed

allocation of the service charge differently, both in terms of who received portions of the service charge and the percentage distribution.

Legends and Centerplate also used different menu language regarding service charges, and the differences extend beyond just the percentage charged to customers. *See* section II.C, *supra*. Indeed, the language used by Legends was substantially changed on or about June 7, 2011, and the menu language is critical to resolution of plaintiffs' claims. *See* Ryan dep., ex. 30; July 11, 2011 Case Management Plan and Scheduling Order at ¶ 2(c), dkt. no. 17 (Plaintiffs assert "[t]he determination of whether certain versions of Defendants' menus violated N.Y. Lab. Law. § 196-d is a complex matter turning on the expectation of a reasonable customer as to whether the charge was a gratuity . . . ").

In summary, plaintiffs' claims arise from substantially different menu language used by two distinct, unrelated employers operating in different locations during different time periods under different collective bargaining agreements which affected different classes of workers and allocated the service charge differently. Under these circumstances, plaintiffs' allegation that both defendant groups violated the same statutory duty against the same plaintiff is insufficient to justify joinder. *See Kenvin*, 37 F.R.D. at 475 (finding misjoinder where plaintiff merely "alleged against each of the four defendants distinct and unrelated acts which happened to involve violations of the same statutory duty" and the "operative facts" of each transaction were unrelated to those of any other."); *see also Exime v. E.W. Ventures*, 250 F.R.D. 700, 701 (S.D. Fla. 2008) (finding misjoinder where plaintiff employed by two "wholly-separate" employer-defendants in different time periods); *Casseus v. R & J of S. Fla., Inc.*, No. 07-21954-CIV, 2007 WL 2376242, at *1 (S.D. Fla. Aug. 16, 2007) (finding misjoinder where defendants employed plaintiff at the same restaurant location during different time periods of ownership by defendants

11

and that "the period of time during which each Defendant employed Plaintiff and each Defendant's alleged violations of the Fair Labor Standards Act was a distinct 'transaction, occurrence or series of occurrences' for the purpose of Rule 20.").

B.     Additional Factors Support Severance

"If a court concludes that defendants have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties or claims from the action." *Deskovic*, 673 F. Supp. 2d at 159-60 (citations omitted); *see also* Fed. R. Civ. P. 21.  "Even if the threshold requirements of Rule 20(a)(2) are met, courts may consider '(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence.'" *Deskovic*, 673 F. Supp. 2d at 171 (quoting *Kehr*, 596 F. Supp. 2d at 826) (other citation omitted).  Here, these additional factors also support severance.

1.     Severance serves the interest of judicial economy and may facilitate settlement

To the extent that severance results in dismissal of the actions for lack of diversity jurisdiction, "judicial economy favors severance because the actions involve small, local matters more appropriately raised in state courts." *Deajess Med. Imaging, P.C. v. Allstate Ins. Co.*, 344 F. Supp. 2d 907, 914 (S.D.N.Y. 2004).   Indeed, plaintiffs have joined the two defendant groups in a single action solely to establish federal diversity jurisdiction for claims for liquidated damages that could not have been brought in state court against the separate defendants.  Without aggregating damages across the Centerplate and Legends defendants, plaintiffs cannot achieve the requisite amount in controversy for complete diversity or CAFA jurisdiction.

In addition, settlement may be facilitated by the severance of claims.  First, if severance results in dismissal for lack of subject matter jurisdiction, the elimination of class claims for

liquidated damages will significantly reduce plaintiffs' settlement demands.  Second, severance will separate the interests and liabilities of the two defendants, making settlement more likely.

2.     <u>Defendants would be prejudiced if the claims are not severed</u>

Legends may be prejudiced if the claims remain misjoined for two reasons.  First, if plaintiffs cannot establish federal jurisdiction based only on their claims against Legends, Legends would be unfairly exposed to class-wide liquidated damages that are unavailable in state court.  Second, Legends and Centerplate are business rivals with an interest in protecting confidential information from each other.  For example, as recently as June 26, 2011, Legends and Centerplate were finalists in a competitive process to provide services at the 49ers' new football stadium, with Centerplate ultimately winning the contract.  *See* Smith decl., ¶ 11.  In addition, Legends and Centerplate are direct competitors in the New York labor market.  *See id.* at ¶ 14.  Here, discovery and trial is likely to result in disclosure of highly confidential business information such as net sales totals, labor and administrative costs, and operating strategies.

3.     <u>The claims involve different witnesses and documentary proof</u>

Finally, where plaintiffs have joined multiple defendants, it will likely be true that at least some plaintiffs will testify against more than one defendant.  But here, among the named plaintiffs, only Ryan can present testimony regarding the Centerplate claims, and her testimony will not be the same against each defendant.  *Compare* Ryan dep. at 75:7 – 79:17 (explaining division of net sales when employed by Centerplate), *with* Ryan dep. at 114:16 – 115:23 (explaining division of net sales when employed by Legends).

As distinct and rival entities, Legends and Centerplate are likely to call different witnesses regarding (1) the allocation and distribution of the service charge; (2) the menus describing the service charge; and (3) union negotiations regarding plaintiffs' compensation.

13

Further, Legends has at least one unique defense – waiver by the union of plaintiffs' claims as a result of a negotiated amendment to the Legends CBA.  *See* Smith decl., att. D.

Since plaintiffs' claims involve different employers in different time periods using different menus and operating under different collective bargaining agreements, the documentary proof of plaintiffs' claims and defendants' defenses will necessarily differ.  In fact, it is difficult to imagine a significant common document that would be used if separate trials were held for the Legends and Centerplate claims.

In summary, the three additional factors considered by courts in determining whether to sever claims all weigh in favor of severance.  In light of the original misjoinder of the two defendant groups, the Court should grant the severance motion.

IV.   ARGUMENT:  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

A.   Plaintiffs Are Not Entitled To Liquidated Damages Or Attorney Fees For Unpaid Gratuities

Even if plaintiffs prevail on their section 196-d claims, neither liquidated damages nor attorney fees can be awarded because a claim for gratuities is not a "wage claim" covered by N.Y. Labor Law section 198, which provides in relevant part:

> In any action instituted in the courts upon a *wage claim* by an employee or the commissioner in which the employee prevails, the court shall allow such employee reasonable attorney's fees and, unless the employer proves a good faith basis to believe that its underpayment of *wages* was in compliance with the law, an additional amount as liquidated damages . . . .

N.Y. Lab. Law § 198(1-a) (emphasis added) (added by L.1966, c. 548, § 2).  Wages are defined as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis," and, since 1972, also encompasses certain "benefits and wage supplements," including "reimbursement of expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay."  N.Y. Lab. Law

§§ 190(1), 198-c(2); *see Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220, 225, 738 N.E.2d 770 (2000) (describing legislative history of section 190(1)).

"Although New York has provided statutory protection for workers' wages for more than a century, the Legislature first defined the term 'wages' in the 1966 enactment of Labor Law article 6 (L 1966, ch. 548)." *Truelove*, 95 N.Y.2d at 223.  In so doing, the legislature intentionally followed the New York Court of Appeals' rejection in *People v. Vetri*, 309 N.Y. 401, 407, 131 N.E.2d 568 (1955), of a broader construction of "wages" to include "all of the benefits, monetary or otherwise, which an employee derives from a master and servant relationship." *Truelove*, 95 N.Y.2d at 225.  Although the legislature subsequently provided certain statutory protections for common fringe benefits, "the basic *Vetri* view . . . has remained intact throughout the legislative history." *Id.*; *see also Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 329 (S.D.N.Y. 2001) ("Although New York explicitly includes benefits and wage supplements in its definition of wages, courts have recognized that this definition should not be interpreted too broadly.") (citations omitted).  Thus, the Court of Appeals has distinguished the restrictive definition of wages in Article 6 from the expansive definition of wages in Article 18.  *Id.* at 224 ("Unlike in other areas where the Legislature chose to define broadly the term 'wages' to include every form of compensation paid to an employee, including bonuses (*see*, Unemployment Insurance Law [Labor Law] §§ 517, 518), the Legislature elected not to define that term in Labor Law § 190 (1) so expansively as to cover all forms of remuneration.").

Significantly, the Article 18 Unemployment Insurance Law sections cited in *Truelove* distinguish between compensation for employment and gratuities paid by third parties in its definition of "wages."  For unemployment insurance purposes, the Labor Law defines "wages" as "all remuneration paid" up to $8,500.  N.Y. Labor Law § 518(1)(a).  "Remuneration is defined

15

as "compensation for employment paid by an employer to his employees; whether paid directly or indirectly by the employer, including salaries, commissions, bonuses, and the reasonable money value of board, rent, housing, lodging, or similar advantage received," as well as "gratuities received by the employee in the course of his employment from a person other than his employer."  N.Y. Labor Law § 517(1).  This express inclusion of gratuities within the definition of "wages" for purposes of unemployment insurance *predates* Labor Law section 190(1),[5] and demonstrates the legislature's intent to exclude "gratuities" from the definition of wages in other sections of the Labor Law passed at a later date.  *See Pajak v. Pajak*, 452 N.Y.2d 381, 382, 437 N.E.2d 1138 (1982) ("The failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended.") (citation omitted); *Matter of Matthew L.*, 882 N.Y.S.2d 291, 295 (N.Y. App. Div. 2009) ("The failure of the Legislature to include such a restriction, when it has otherwise done so under other circumstances within the same statute, should be construed as indicating that the exclusion was intentional.") (citation omitted); *Childs v. Bane*, 605 N.Y.S.2d 488, 492 (N.Y. App. Div. 1993) ("When different terms are used in various parts of a statute, it is reasonable to assume that a distinction between them is intended.").

The structure of Article 6 also makes clear that gratuities do not come within the definition of "wages" or "wage claims."  Section 193, which was included in the same 1966 Act that defined "wages," prohibits an employer from making any "deductions from the wages of an employee."  N.Y. Lab. Law § 193.  If gratuities were wages, then section 193 would preclude an employer from taking any part of any tip or requiring an employee to share tips with other workers.  Yet two years after section 193 was enacted, Article 6 was amended to add section 196-

---

[5]  *See Raskin v. Corsi*, 60 N.Y.S.2d 400, 403 (N.Y. App. Div. 1946).

d to preclude an employer from taking any part of a gratuity, without any amendments to sections 190(1) or 198. *See* N.Y. Lab. Law. § 196-d (added by L.1968, c. 1007, § 1). If section 193 already precluded such conduct, section 196-d would not have been necessary. A 1990 amendment to Article 6 recognized and continued the distinction between "wages" and "tips" in sections 193 and 196-d. *See* N.Y. Lab. Law § 198-d (added by L.1990, c. 163,§ 1) (requiring posting of sections 193 and 196-d and "any regulations promulgated pursuant thereto relating to illegal deductions from wages and tips by employers.").

Because Article 6 contemplates that wages and gratuities are two different things, plaintiffs' claims are not "wage claims" under section 198. Accordingly, plaintiffs may not rely upon liquidated damages or attorney fees to meet the amount in controversy.

> **B.**    **Plaintiffs Should Not Be Permitted To Establish Federal Jurisdiction By Bootstrapping Damages Which Are Not Available Until After Federal Jurisdiction Is Established**

In *Shady Grove Orthopedic Associates*, the Supreme Court ruled that New York's bar against maintaining class actions seeking penalties (*i.e.*, liquidated damages) does not apply in diversity actions in federal court because it conflicts with Rule 23. *See* 130 S. Ct. at 1437-44; *id.* at 1448-60 (Stevens, J., concurring in part and concurring in judgment). Since its individual claim was for only $500, Shady Grove asserted federal jurisdiction only under CAFA, thus seeking to aggregate putative class member claims to meet the $5 million amount in controversy requirement. *Id.* at 1437 & n.3. The plurality opinion acknowledged "that keeping the federal-court door open to class actions that cannot proceed in state court will produce forum shopping," *id.* at 1447, but the Supreme Court did not address whether penalties unavailable in state court could be first utilized to establish the amount in controversy in federal court.

"The amount in controversy is determined at the time the action is commenced." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). When plaintiffs

filed their class action complaint, the amount in controversy between the parties was defined by the value of their <u>state law</u> claims, which under state law excluded liquidated damages. *See* N.Y. C.P.L.R. § 901(b). Thus, such damages should not be considered in determining the amount in controversy when the complaint was filed. For example, if plaintiffs had filed their class action complaint in state court and the amount in controversy was less than the $75,000 or $5 million thresholds, Legends could not have removed the lawsuit to federal court and claimed that the amount in controversy should be augmented by the amount of liquidated damages available once the action was removed. The same rule should apply for forum shopping plaintiffs.

C.      Even If Liquidated Damages Are Available, Plaintiffs May Only Seek A 25%
        Penalty For Claims Arising Before April 9, 2011

On December 10, 2010, the New York legislature passed the Wage Theft Prevention Act (WTPA), which, *inter alia*, raised the available amount of liquidated damages from 25% to 100% percent, effective April 9, 2011. *See Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635 (LAK) (JCF), 2011 WL 2022644, *6 n.2 (S.D.N.Y. May 2, 2011) (Francis, Mag.), *adopted by* 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (Kaplan, J.); 2010 N.Y. Sess. Laws ch. 564; New York Lab. Law §§ 198(1-a), 663(1). On October 3, 2011, plaintiffs amended their complaint to seek 100% liquidated damages for the entire period covered by this action.[6] But neither the statutory language nor the legislative intent support retroactive application of the enhanced liquidated damages provision in section 198(1-a). *See Wicaksono*, 2011 WL 2022644 at *6 n.2.

---

[6] In granting leave to amend, the Court made no determination as to whether the WTPA applied retroactively. *See* Sept. 19, 2011 Order (dkt. no. 17).

In *Wicaksono*, Magistrate Judge Francis of this Court correctly determined that section 198's liquidated damages provisions should be applied "as they existed at the time of the defendant's violations."  2011 WL 2022644 at *6 n.2.  Judge Francis wrote:

> "'retroactive operation is not favored by [New York] courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it.'"  *CFCU Community Credit Union v. Hayward*, 552 F.3d 253, 262 (2d Cir. 2009) (alteration in original) (quoting *Majewski v. Broadalbin-Perth Central School District*, 91 N.Y.2d 577, 584, 673 N.Y.S.2d 966, 968 (1998)); *see also Landgraf v. USI Film Products*, 511 U.S. 244, 280-86 (1994) (finding presumption against retroactivity is in effect when new statute would "increase a party's liability for past conduct" and applying this rule to statute authorizing compensatory and punitive damages for conduct already prohibited under Title VII).  There is no indication in the Act itself, nor in the Sponsor's Memorandum or any previous drafts of the Act, that it was intended to have retroactive effect.  *See* 2010 N.Y. Sess. Laws ch. 564; N.Y. Spons. Memo. 2010 S.B. 8380; 2009 N.Y. S.B. 8380 (June 27, 2010).

*Id.*.  Other cases decided after the WTPA's April 9, 2011 effective date have applied the 25% liquidated damages standard in effect at the time of violations.  *See Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) ("Pursuant to the version of the NYLL § 198(1-a) [that was] in effect during Kuebel's time at B & D, Kuebel is entitled to liquidated damages equal to 25% of the total amount of wages due of B & D's failure to pay him was 'willful.'") (citations omitted); *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608 (RJH), 2011 WL 2127808, *52 & n.26, 788 F. Supp. 2d 253 (S.D.N.Y. May 27, 2011) (citing to 25% liquidated damages rate because the amendments to section 198(1-a) "took effect after the events and commencement of this litigation").

"In New York, while not determinative, a legislator's sponsor memo submitted contemporaneously with the legislation 'is entitled to considerable weight in discerning legislative intent.'"  *See CFCU Cmty. Credit Union*, 552 F.3d at 263 (citations omitted).  The Sponsor's Memorandum for the WTPA states that its purpose was to "expand the rights of

19

employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately" because "[t]he penalties currently in place for employers paying less than minimum wage are minimal and offer little deterrent." N.Y. Spons. Memo. 2010 S.B. 8380 (June 29, 2010) (attached hereto as Ex. 10). This statement of purpose is also consistent with the Second Circuit's view that "liquidated damages under the Labor Law constitute a penalty to deter an employer's willful withholding of wages due." *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (internal quotation and citation omitted); *see also Lanzetta v. Florio's Enters., Inc.*, No. 08 Civ. 6181(DC), 2011 WL 3209521, *5 (S.D.N.Y. July 27, 2011). However, retroactive application of an increased penalty cannot further the stated purpose of deterrence.

In addition, the legislature's decision to postpone the effective date until 120 days after passage "furnishes critical and clear indicia of  intent" to apply the WTPA only prospectively. *See* N.Y. Spons. Memo. 2010 S.B. 8380 (June 29, 2010) ("This shall take effect on the one hundred and twentieth day after becoming law."); 2010 Sess. Law. Ch. 564; *see Deutsch v. Catherwood*, 294 N.E.2d 193, 194 (N.Y. 1973) ("The postponement of the effective date of each amendment furnishes critical and clear indicia of intent.  If the amendments were to have retroactive effect, there would have been no need for any postponement.") (citations omitted); *see also Matter of Ayman v. Teachers' Retirement Bd. of City of N.Y.*, 9 N.Y.2d 119, 125 (1961); *In re Kaufman's Estate*, 285 N.Y.S. 347, 351 (N.Y. Sur. Ct. 1936).

In summary, both the New York Legislature's express postponement of the statute's effective date and legislative intent indicate that plaintiffs cannot seek 100% liquidated damages for claims arising in the period before April 9, 2011.  As explained in section IV.E.1, *infra*, without retroactive application, none of the named plaintiffs can meet the $75,000 amount in controversy.

D.      Plaintiffs Have Already Been Paid Part Of The Service Charge

These forum shopping plaintiffs cannot in good faith maintain that they are owed the full

service charge, which constituted 20% of net sales.  It is undisputed that plaintiffs received 4-6%

of net sales under the Legends CBA.  *See* Ryan dep. at 124:2 – 127:8; 129:15-25; Carr dep. at

77:5 – 78:10; 122:1 – 123:12; Garner dep. at 48:9-12.  Indeed, Ryan concedes that if she

received a 6% portion of the service charge, she is only owed the remaining 14% portion.  *See*

Ryan dep. at 153:11 – 154:22.  Absent *evidence* that the 4-6% payment under the CBA was not

part of the service charge they are claiming, the maximum amount of unpaid gratuities in

controversy should be the 14-16% portion of the service charge not paid to plaintiffs.

E.      The Court Lacks Subject Matter Jurisdiction Over The Legends Claims

 "A plaintiff asserting subject matter jurisdiction has the burden of proving by a

preponderance of the evidence that it exists."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d

167, 170 (2d Cir. 2008) (internal quotation omitted).  "'[T]he court must take all facts alleged in

the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction

must be shown affirmatively, and that showing is not made by drawing from the pleadings

inferences favorable to the party asserting it."  *Id.* (internal citations and quotation marks

omitted).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1) a district court may consider evidence outside the pleadings."  *Id.* (citing *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "[O]n a motion to dismiss, courts 'are not

bound to accept as true a legal conclusion couched as a factual allegation.'"  *Conyers v.*

*Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (citations omitted).

As demonstrated below, plaintiffs cannot meet the amount in controversy requirement for

complete diversity under 28 U.S.C. § 1332(a) because none of the named plaintiffs can assert an

individual claim for $75,000 against Legends.  Nor can plaintiffs establish diversity jurisdiction

under CAFA, 28 U.S.C. § 1332(d), because the amount in controversy for the putative Legends

class does not exceed $5 million.

1.   No Named Plaintiff Meets The Individual $75,000 Amount In Controversy
Requirement For Complete Diversity Jurisdiction

a.   Legal Standards

"A party invoking the jurisdiction of the federal court has the burden of proving that it

appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional

amount" of $75,000 for at least one named plaintiff.  *Tongkook*, 14 F.3d at 784 (citation

omitted); *Panam Mgmt. Grp., Inc., v. Pena*, No. 08-cv-2258(JFB)(ARL), 2010 WL 3708656, *3

(E.D.N.Y. Sept. 14, 2010) ("where there are multiple plaintiffs and federal jurisdiction is based

on diversity, at least one plaintiff's claims, standing alone, must exceed the $75,000 amount-in-

controversy requirement for the Court to have original jurisdiction over the action."); *see* 28

U.S.C. § 1332(a).

 "The amount in controversy is determined at the time the action is commenced."

*Tongkook*, 14 F.3d at 784.  A plaintiff may not aggregate claims against multiple defendants

unless the liability to plaintiff is common, undivided, or joint.  *See, e.g., Chase Manhattan Bank,*

*N.A. v. Aldridge*, 906 F. Supp. 870, 874 (S.D.N.Y. 1995).  Nor can multiple plaintiffs aggregate

their claims to meet the amount in controversy.  *See Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216

F.2d 291, 296 (2d Cir. 2000) (citing *Snyder v. Harris*, 394 U.S. 332, 336 (1969)).

The Second Circuit recognizes a "rebuttable presumption that the face of the complaint is

a good faith representation of the actual amount in controversy."  *Wolde-Meskel v. Vocational*

*Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).  However, "in the event the

complaint does not allege, on its face, facts plausibly suggesting that the amount in controversy

exceeds the jurisdictional minimum, the court need not presume that the general allegation that the amount in controversy exceeds the jurisdictional minimum constitutes a good faith representation of the actual amount in controversy." *Wood v. Maguire Auto. LLC*, No. 5:09-CV-0640(GTS/GHL), 2011 WL 4478485, at *2 (N.D.N.Y. Sept. 26, 2011).  Where the presumption applies, it may be overcome if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Wolde-Meskel*, 166 F.3d at 63.  "It appears to a legal certainty that [a] claim is less than the jurisdictional amount where the applicable [] law bar[s] the type of damages sought by plaintiff." *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009) (internal quotation and citations omitted).

Here, plaintiffs did not initially allege any amount in controversy in support of section 1332(a) jurisdiction. *See* First Am. Compl. at ¶ 55; Compl. at ¶ 55, filed May 9, 2011, dkt. no. 1. In their Second Amended Complaint, plaintiffs only allege that "the amount of controversy between at least one named Plaintiff and the Legends Hospitality Defendants exceeds the sum or value of $75,000," but they have still not identified which named plaintiff(s) satisfy the requirement or alleged the facts supporting their legal conclusion.  Second Am. Compl. at ¶ 44; *see LaSala v. E*Trade Secs. LLC*, No. 05 Civ. 5869(SAS), 2005 WL 2848853, at *5 (S.D.N.Y. Oct. 31, 2005) ("[A] plaintiff cannot sidestep the jurisdictional question simply by pleading an indeterminate amount of damages, accompanied by a conclusory statement that the amount-in-controversy threshold is met.").  In any event, as shown below, no plaintiff can meet the amount in controversy requirement with regard to Legends.

        b.    The maximum alleged individual amount of withheld gratuities is less than $75,000

First, after accounting for the service charge payments made under the CBA, the maximum amount of withheld gratuities as of May 10, 2011 for any named plaintiff is $

36,582.06 (Ryan).   *See* section II.E.1, *supra*; Smith decl. at ¶ 24.   Even ignoring these

payments, Ryan's maximum claim amount is only $ 52,260.09.   *See* section II.E.1, *supra*; Smith

decl. at ¶ 24.   Either way, plaintiffs cannot meet the amount in controversy requirement without

including liquidated damages and attorney fees under section 198.   But as demonstrated in

Sections IV.A & B, *supra*, such relief is not available.   Accordingly, it appears "to a legal

certainty" that plaintiffs cannot satisfy the amount in controversy requirement.   *See Charvat*, 561

F.3d at 628.

> c.      The maximum alleged individual amount of withheld gratuities
>         and available liquidated damages is less than $75,000

Second, even if liquidated damages are available, such penalties are insufficient to

catapult any plaintiff over the $75,000 threshold unless the WTPA is applied retroactively.   If

only 25% liquidated damages are available before April 9, 2011, then the highest possible

amount in controversy (Ryan) is only $ 46,681.89, or $ 66,688.41 if the service charge payments

previously made are ignored.[7]

---

[7]  The $ 46,681.89 amount includes, as liquidated damages, 25% of the $ 35,309.65 in Ryan's

unpaid service charges through April 8, 2011, and 100% of the $ 1,272.41 in Ryan's unpaid

service charges between April 9 and May 10, 2011.   *See* section IIE.1, *infra*; Smith decl. at ¶ 24.

If the service charge payments under the CBA are ignored, the $ 66,688.41 amount includes, as

liquidated damages, 25% of the $ 50,442.35 in Ryan's service charges through April 8, 2011, and

100% of the $ 1,817.73 in Ryan's service charges between April 9 and May 10, 2011.

> d.   Plaintiffs have not alleged any amount of pre-complaint attorneys' fees

Third, assuming arguendo that liquidated damages may be counted, but the WTPA is not applied retroactively, plaintiffs still cannot establish the amount in controversy without including an unalleged and speculative amount of attorney fees incurred after the filing of the complaint.[8]

"The amount in controversy is determined at the time the action is commenced." *Tongkook*, 14 F.3d at 784.  "Attorney's fees may be included in the calculation of the jurisdictional amount only if they are recoverable as a matter of right pursuant to contract or statute."  *Houston v. Scheno*, No. 06-CV 2901(SJF), 2007 WL 2230093, at *3 (E.D.N.Y. July 31, 2007) (citing *Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir.), *vacated on other grounds*, 409 U.S. 56 (1972)) (other citations omitted).  But since "jurisdiction depends on events that exist on or before the date of filing," legal fees incurred after the filing of the complaint do not count towards the amount in controversy.  *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001); *see also Dukes v. Twin City Fire Ins. Co.*, No. CV-09-2197-PHX-NVW, 2010 WL 94109, at *2 (D. Ariz. Jan. 6, 2010) ("Future attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in controversy' at the time of removal."); *Mak Automation, Inc. v. G.C. Evans Sales & Mfg. Co.*, No. 4:06CV1579MLM, 2008 WL 821711, at *3 (E.D. Mo. Mar. 25, 2008) ("only those attorneys' fees accrued at the date Plaintiff filed the Complaint in the matter under consideration may be included in the calculation of the jurisdictional amount");

---

[8]  Plaintiffs raised in their June 17, 2011 pre-motion conference letter that the amount in controversy may include attorney fees, but their Second Amended Complaint fails to plead any facts regarding such fees.  Consequently, no attorney fees may be added to the amount in controversy.  Nevertheless, defendants address the extent to which attorney fees could be included in the amount in controversy if a sufficient factual showing were made.

*Great Am. Leasing Corp. v. Rohr-Tippe Motors, Inc.*, 387 F. Supp. 2d 992, 997 (N.D. Iowa 2005) ("In determining the amount in controversy, the court cannot speculate about attorney fees and interest that might accrue if the matter were to proceed to trial and the parties were to engage in acrimonious litigation"); *Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, at *4 (N.D. Cal. Oct. 4, 1999) ("the only [attorney's] fees that can be considered are those incurred as of the date of removal"). The Seventh Circuit's analysis in *Hart* is consistent with the Second Circuit's holding that "[t]he amount in controversy is determined at the time the action is commenced." *Tongkook*, 14 F.3d at 784. Thus, "if the defendant can extinguish the plaintiff's entire claim by tendering $75,000 or less at the outset, the amount 'in controversy' does not exceed $75,000." *Hart*, 253 F.3d at 274.

Here, plaintiffs failed to allege that any attorney fees were incurred prior to filing the complaint. Indeed, plaintiffs Carr and Ryan admitted that they have not been invoiced for or paid any legal fees. *See* Carr dep. at 102:9-25; Ryan dep. at 67:18-25. Carr also acknowledged that attorney fees cannot be calculated at this time. *See* Carr dep. at 105:6-12. Accordingly, attorney fees should be excluded from the amount in controversy calculation.

In summary, the only way that any named plaintiff can establish the jurisdictional amount is by ignoring service charge payments received under the CBA *and* including 100% liquidated damages for the entire relevant period before filing the complaint. Even if the service charge payments already paid are ignored, if this Court finds that *either* (1) no liquidated damages are available, or (2) the 100% penalty does not apply retroactively, then plaintiffs, "to a legal certainty," cannot meet the $75,000 amount in controversy requirement and their complaint should be dismissed for lack of subject matter jurisdiction.

2.      Plaintiffs Cannot Meet The $5,000,000 Amount in Controversy Under CAFA

Under CAFA, plaintiffs must establish, *inter alia*, that the matter in controversy exceeds $5 million.  28 U.S.C. § 1332(d)(2).  In a CAFA action, the party asserting federal jurisdiction bears the burden of proving that the case is properly in federal court.  *DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271, 275 (2d Cir. 2006).  As such, "[p]laintiff must allege the jurisdictional facts upon which subject matter is based."  *Sunshine v. Reassure Am. Life Ins. Co.*, No. 10-01030, 2011 WL 666054, at *2 (E.D. Pa. Feb. 22, 2011) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182 (1936)).  "[A] plaintiff cannot sidestep the jurisdictional question by pleading an indeterminate amount of damages, accompanied by a conclusory statement that the amount-in-controversy threshold is met."  *LaSala*, 2005 WL 2848853 at *5.

Here, plaintiffs allege the "amount in controversy against the Legends Hospitality Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interests and costs."  *See* Second Am. Compl., ¶ 46.  But, standing alone, "this legal conclusion is insufficient to establish subject matter jurisdiction without accompanying allegations of the underlying jurisdictional facts."  *Sunshine*, 2011 WL 666054 at *2.  By not alleging underlying jurisdictional facts concerning the amount in controversy, such as quantifying the amount of actual damages and liquidated damages available to the class, plaintiffs' complaint does not satisfy the amount in controversy requirement.  *Id.*; *see also LaSala*, 2005 WL 2848853 at *5 (finding the court "had no way to determine whether [plaintiff's] allegations of excess compensation reach the jurisdictional amount.").

Nevertheless, during discovery, the Legends defendants produced summaries of business records showing that the total amount of service charges collected through May 10, 2011 was $ ████████, or $ ████████ after accounting for the $ ████████ in service charge

27

payments made under the CBA. *See* Smith decl., att. E. Since both amounts are less than one-half the required amount in controversy to support CAFA jurisdiction, plaintiffs cannot satisfy the amount in controversy even if the WTPA is applied retroactively. If the WTPA cannot be applied retroactively, then inclusion of liquidated damages would only increase the amount in controversy to either $███████████ or $███████████, depending on whether the prior service charge payments are ignored.[9]   In either event, inclusion of any attorney fees incurred <u>prior to</u> the filing of the complaint will not be sufficient to reach the $5 million threshold. *See Hart*, 253 F.3d at 274. Accordingly, this Court lacks subject matter jurisdiction under CAFA.

V.      <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' claims against the Legends defendants should be dismissed due to lack of subject matter jurisdiction.

---

[9]  The $███████████ amount includes, as liquidated damages, 25% of the $███████████ in unpaid service charges through April 8, 2011, and 100% of the $██████████ in unpaid service charges between April 9 and May 10, 2011. If the service charge payments under the CBA are ignored, the $███████████ amount includes, as liquidated damages, 25% of the $███████████ in service charges through April 8, 2011, and 100% of the $██████████ in service charges between April 9 and May 10, 2011.

Dated: October 28, 2011

      New York, New York

                         Respectfully submitted,

                         _/s/ Lawrence D. Levien_
                         Lawrence D. Levien (admitted _pro hac vice_)
                         (llevien@akingump.com)
                         AKIN GUMP STRAUSS HAUER & FELD LLP
                         One Bryant Park
                         New York, NY  10036
                         (212) 872-1000

                         Attorneys for Defendants Legends Hospitality, LLC
                         and Legends Hospitality Management LLC